# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **BARRY TAUL, ex rel., UNITED STATES OF AMERICA,** )<br>)<br>) | |
| **Plaintiff,** ) | |
| ) | **Case No.: 2:14-CV-0061-VEH** |
| **v.** )<br>) | |
| **NAGEL ENTERPRISES, INC., et al.,** )<br>)<br>) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION</u>

## I. <u>Introduction</u>

This is an opinion disposing of Nagel Enterprises Inc., and Jed Nagel's ("Defendants" or "Nagel") motion for summary judgment under Rule 56. After careful consideration of the pleadings and record, the motion is **GRANTED IN PART** and **DENIED IN PART**. On the court's own motion under Rule 56(f), summary judgment is **GRANTED** against Defendants.

The court takes up an additional matter in this opinion, a motion to reconsider its denial of a motion to compel. The motion to reconsider is **GRANTED**. The motion to compel is **DENIED.**

# I. **Factual and Procedural Background**

Although it is ancient history by comparison, there was a criminal case filed on August 31, 2011, arising from the same facts and circumstances as this whistleblower action. In the criminal case, Demosthenes Lalisan and Richard Alan Hicks were charged with a conspiracy to defraud the United States and two counts of healthcare fraud. They pleaded guilty in the spring of 2012, and around that time, funds held by Defendants were seized *in rem* by the United States. Because the only facts at issue in the motion are those pertaining to the *in rem* release and whether Taul was the original source of the information, only they will be discussed herein.[1]

### A. **Undisputed Facts**

On March 7, 2012, the United States filed an action *in rem* against the seized funds under 18 U.S.C. § 981. (Doc. 61-1, ¶ 1). The funds were seized from accounts held by Nagel Enterprises and Jed Nagel.  The complaint against the funds was supported by an affidavit of FBI Special Agent Michael Marquet, who repeated, in whole or in part, allegations made by Barry Taul ("Taul" or "Plaintiff"). (*Id.,* ¶ 2). The allegations therein also support this *qui tam* action. *Id.*

---

[1]  Nagel also moves for summary judgment on the ground that some of Nagel's alleged retaliatory acts fall outside of the limitations period. Neither party has included facts supporting these allegations in their listing of undisputed or disputed facts, although the relevant dates are found in the amended complaint and argument sections of their briefs.

The government settled the claim against the funds for $1.1 million. (*Id.* ¶, 4).
Thereafter, a judgment of forfeiture was entered in favor of the United States for
$1.1 million. (*Id.* ¶ 5).

### B. Disputed Facts

The parties disagree about whether the settlement of the *in rem* action also
released the claims in this case and about whether the settlement was an accord and
satisfaction discharging the claims in this case. (Doc. 61-1, ¶ 3).

Defendants believe Taul claims that in August of 2010, he went to the
Federal Bureau of Investigation, met with Special Agent Marquet, and gave him a
statement about the alleged scheme involving the Defendants. They further claim
that Taul admits he has no copy of this statement and claims he cannot get one
from the FBI. (*Id.* ¶ 13). For his part, Taul denies this, saying only that he spoke to
Marquet in approximately August 2010, but not specific as to the time. (Doc. 69 ¶
13).

Defendants claim that the verified United States complaint for forfeiture *in
rem* sought to recover sums of money allegedly received by the Defendants in the
instant case which are the identical United States funds Taul now seeks to recover
as Relator in the instant *qui tam* case brought by Taul on behalf of the United
States. (*Id.* ¶ 14). Taul disputes this, asserting that neither the complaint nor the

affidavit assert that money in the *in rem* forfeiture was identical to damages in this case. (Doc. 69 ¶ 14).

Defendants state Taul contends that he reported the full details of the alleged scheme in which Defendants in the instant case were allegedly involved in defrauding the United States to Special Agent Marquet of the Federal Bureau of Investigation in August of 2010, but the *qui tam* complaint was not filed until January of 2014. (*Id.* ¶ 15). Taul denies this, saying only that he spoke to Marquet in approximately August 2010, but was not specific as to the time. (Doc. 69 ¶ 13).

Defendants say Taul claims that he informed the FBI of the fraud and illegal kickback scheme in August of 2010 after discovering the matter in June of 2009. (*Id.* ¶ 16). Taul denies this, saying only that he spoke to the FBI in approximately August 2010, but not specific as to the time. (Doc. 69 ¶ 13).

### C. Procedural History

On January 13, 2014, the complaint in this case was filed under seal. (Doc. 1). The complaint is brought pursuant to the False Claims Act. The United States declined to intervene on March 28, 2014. (Doc. 6). Nagel and Nagel Enterprises were served in April 2014. (Doc. 9–10). On May 5, 2014, Nagel filed a motion to dismiss for lack of subject matter jurisdiction. (Doc. 15). The court denied this motion without prejudice because further factual development was required. (Doc.

4

28). Taul filed an amended complaint on April 13, 2015. (Doc. 47). In it, he asserted five grounds for relief: violations of 1) 31 U.S.C. § 3729(a)(1)(A); 2) 31 U.S.C. § 3729(a)(1)(C); 3) 31 U.S.C. § 3729(a)(1)(B); 4) retaliation under 31 U.S.C. § 3730(h); and 5) violation of 42 U.S.C. § 1320a-7b(b)(2). (Doc. 47).

Defendant answered the complaint on June 24, 2015, asserting a litany of affirmative defenses, including the "affirmative defense" of plaintiff's failure to comply with Rule 9(b). (Doc. 52). No pre-answer motion was filed in response to the amended complaint. On July 30, 2015, Nagel moved for summary judgment. (Doc. 61; 61-1). Plaintiff filed a response on August 20, 2015. (Doc. 69). Nagel filed a reply on September 2, 2015. (Doc. 70). The court ordered that Taul file a surreply on September 16, 2015, and he did so on October 7, 2015. On November 23, 2015, the court entered a notice pursuant to Rule 56(f)(1) that it was contemplating granting summary judgment in Taul's favor on certain issues. Defendants filed a response to the court's notice on December 13, 2015. Taul filed a response in support of summary judgment in his favor on December 22, 2015. The court denied Defendants' motion to file a reply to Taul. The motion is now under submission.

## II. Discussion

Jed Nagel and Nagel Enterprises, Inc., are bedeviled by the distinction

5

between an *in rem* proceeding and an *in personam* proceeding. This appears to be because the same allegedly fraudulent kickback scheme gave rise to a criminal prosecution and related asset forfeiture under 18 U.S.C. § 981 and the instant 31 U.S.C. § 3730(b) whistleblower action. Since the distinction is critical to this opinion, and the Defendants' misapprehension of it is almost the entire basis of their forty-two pages of briefing in support of their motion for summary judgment, I will begin with a primer on the subject before proceeding to their arguments in support of summary judgment.

Federal courts most often hear actions *in personam*, which is a phrase that describes both the nature of the suit and the effect of the suit. The nature is "brought against a person rather than property." BLACK'S LAW DICTIONARY (10th ed. 2014), in personam. The effect of the *in personam* action "is to determine the rights and interests of the parties themselves in the subject matter of the action," and "to bind the parties to" that determination. R.H. Graveson, *Conflict of Laws* 98 (7th ed. 1974).

In contrast, an *in rem* action is Latin for "against a thing;" such an action determines interests in a thing. BLACK'S LAW DICTIONARY (10th ed. 2014), in rem. An *in rem* judgment is "conclusive as to those interests with regards to all persons" but "does not bind anyone with respect to a personal liability." RESTATEMENT

6

(SECOND) OF JUDGMENTS § 30. An *in rem* action may feature claimants to property, but the claimants are not formally parties to the action. *See United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1435 (11th Cir. 1991).

"Quaint[]," *Austin v. United States*, 509 U.S. 602, 625 (1993) (Scalia, J., concurring in part and concurring in the judgment) though it may be, a civil forfeiture action is an action against a thing, notwithstanding the fact that forfeiture is in some sense (often quite directly) derivative of a person's illicit conduct. Drawing on the common law deodand,[2] *id.* at 616 (Blackmun, J.), civil forfeiture actions proceed on the theory that "the thing is primarily considered the offender." *J.W. Goldsmith, Jr., Grant Co. v. United States*, 254 U.S. 505, 511 (1921). For this reason, a civil forfeiture may lie notwithstanding the innocence of the property's (soon to be) former owner. *See Dobbin's Distillery v. United States*, 96 U.S. (6 Otto) 395, 401 (1877).

While the line is somewhat fuzzy, *in rem* actions should be distinguished from quasi *in rem* actions, in which the court is sometimes said to be exercising

---

[2] "At common law the value of an inanimate object directly or indirectly causing the accidental death of a King's subject was forfeited to the Crown as a deodand. The origins of the deodand are traceable to Biblical and pre-Judeo-Christian practices, which reflected the view that the instrument of death was accused and that religious expiation was required." *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680–81 (1974).

attachment jurisdiction. It is "jurisdiction [...] exercised only with respect to the thing proceeded against and in which the plaintiff seeks not to determine the existence of interests in the thing but rather to apply the thing to the satisfaction of a claim against the defendant." RESTATEMENT (SECOND) OF JUDGMENTS § 32.

Proceedings under section 981 of Title 18, which exist in aid of the court's criminal jurisdiction, *cf. Republic Nat. Bank of Miami v. United States*, 506 U.S. 80, 87 (1992) (describing *in rem* forfeiture as an aid to its admiralty jurisdiction), are somewhat closer to quasi *in rem* actions than a prototypical *in rem* proceeding, like an action to quiet title. But it is well settled that they are truly *in rem*. *United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, CA*, 545 F.3d 1134, 1144 (9th Cir. 2008)*; accord United States v. Certain Real Prop., Located at 317 Nick Fitchard Rd., N.W., Huntsville, AL*, 579 F.3d 1315, 1317 (11th Cir. 2009). *See also Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 69 (2d Cir. 2009) (describing the significance of quasi *in rem* versus *in rem* jurisdiction vis-à-vis different kinds of forfeitures).

To summarize: a section 981 forfeiture is an *in rem* proceeding against a thing; such a proceeding does not adjudicate personal rights. The forfeiture is in aid of the court's criminal jurisdiction.

Turning now to the motion, Defendants advance several distinct grounds for

summary judgment, although most of them are some variation or another of "the prior asset forfeiture proceeding precludes this civil action." To dispose of this motion expeditiously, the court has lumped the claims together where appropriate, and found the following "grounds" asserted for summary judgment: 1. The court lacks subject matter jurisdiction; 2. The release in the section 981 action also released these claims and/or the section 981 release was an accord and satisfaction for these claims; 3. The section 981 action claim precludes the action here; 4. This action is barred by laches, and the statute of limitations has run on the employment retaliation claim; 5. Taul did not adequately plead fraud; and 6. Taul is estopped from bringing this action. The court will take them seriatim.

### A. The Court has Subject Matter Jurisdiction over this Action[3]

The court is under a continuing obligation to ensure that it has the power to hear the claims that come before it. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Establishing that the court has jurisdiction is "a threshold matter," and is "inflexible and without exception." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95 (1998). After this inquiry, if jurisdiction is found not "to exist,

---

[3] The court assumes these issues are ones of subject matter jurisdiction because the parties believe they are. Until 2010, 3730(e)(4) was a jurisdictional bar, *see Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 467–70 (2007), but after the 2010 amendments, it is not clear it remains so. *See United States ex rel. Absher v. Momence Meadows Nursing Center, Inc.*, 764 F.3d 699, 706 (7th Cir. 2014). It was never clear that paragraph 3 was jurisdictional. *See id.*

the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868).

Defendants have raised two challenges to the court's power to hear this case, and, with the foregoing principles in mind, these challenges take priority over all others.

### 1.  A Section 981 Forfeiture is not a Hearing within the meaning of 31 U.S.C. § 3730(e)(3)

31 U.S.C. § 3730(e)(3) prohibits the bringing of a false claims action by a private person "which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party." It is Nagel's position that this action is "based upon allegations or transactions" which were the subject of the 2012 asset forfeiture action, which was a "civil suit or administrative civil money penalty proceeding in which the government is already a party" within the meaning of the statute. Therefore, Nagel reasons, the action must be dismissed.

Taul responds that the *qui tam* action is not "based upon [the same] allegations or transactions" as the forfeiture action, citing a First Circuit standard for resolving identity between two causes of action. *See United States ex rel. S. Prawer and Co. v. Fleet Bank of Maine*, 24 F.3d 320, 327–28 (1st Cir. 1994), *overruled on other grounds by Allison Engine Co. v. United States ex rel. Sanders*,

553 U.S. 662 (2008). The gist of the *Prawer* standard is that only so-called parasitic *qui tam* suits are prohibited by 3730(e)(3); dismissal is required when the *qui tam* case "is receiving 'support, advantage, or the like' from the 'host' case (in which the government is a party) 'without giving any useful or proper return' to the government (or at least having the potential to do so)." 24 F.3d at 327–28.

To the court's eye, 3730(e)(3) is most sensibly analyzed by asking 1) whether the allegations and transactions in this case are already being or have been litigated; 2) whether that litigation is or was in a civil suit or administrative civil money penalty proceeding; and 3) whether the government was a party in the earlier case. This appears to be the route that most of the Courts of Appeals have taken, although the first question is by far the most frequently answered.[4] *See, e.g., United States ex rel. Absher v. Momence Meadows Nursing Center, Inc.*, 764 F.3d 699, 706 (7th Cir. 2014); *United States. ex rel. Found. Aiding The Elderly v. Horizon W.*, 265 F.3d 1011, 1015 (9th Cir.2001)*;United States ex rel. Dunleavy v. Cnty. of Del.*, 123 F.3d 734, 741 (3d Cir.1997), *abrogated on other grounds by Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson,* 559 U.S. 280 (2010)*; Costner v. URS Consultants, Inc.*, 153 F.3d 667, 676 (8th

---

[4] This is likely due in no small part to the fact that the "allegation or transaction" language also appears in 3730(e)(4).

Cir.1998); *United States ex rel. Springfield Terminal Ry. Co. v. Quinn,* 14 F.3d 645, 653–54 (D.C. Cir. 1994).

*Prawer* was trying to come up with a way of answering the first question—whether there is identity between the claims in the prior proceeding and the *qui tam* action. It is unquestionably true that the asset forfeiture was based on the same "allegations or transactions" as this action, so *Prawer* is not much help. As the court sees it, the issue in this case is whether a section 981 proceeding is a "civil suit or administrative money penalty" within the meaning of section 3730(e)(3). Several district courts have considered the meaning of "administrative money penalty." *See, e.g., U.S. ex rel. Int'l Bhd. of Elec. Workers, Local Union No. 98 v. Farfield Co.*, No. CIV.A. 09-4230, 2013 WL 3327505, at *10 (E.D. Pa. July 2, 2013); *U.S. ex rel. Gillespie v. Kaplan Univ.*, No. 09-20756-CIV, 2012 WL 1852085, at *2 (S.D. Fla. May 21, 2012) *clarified on denial of reconsideration*, No. 09-20756-CIV, 2012 WL 4984992 (S.D. Fla. Oct. 17, 2012); *U.S. ex rel. McDermott v. Genentech, Inc.*, No. 05-147-P-C, 2006 WL 3741920, at *7 (D. Me. Dec. 14, 2006) report and recommendation adopted, No. CIV. 2:05-CV-147, 2007 WL 2128410 (D. Me. July 24, 2007) *Found. For Fair Contracting, Ltd. v. G & M E. Contracting & Double E, LLC*, 259 F. Supp. 2d 329, 336 (D.N.J. 2003); *U.S. ex rel. Johnson v. Shell Oil Co.*, 26 F. Supp. 2d 923, 928 (E.D. Tex. 1998). But the

court can find no published opinion directly considering the meaning of "civil suit." This appears to be uncharted territory, so a resort to general principles of statutory construction is the only way forward.

It would be an odd thing if "civil suit," as used in 3730(e)(3), contemplated every kind of relief available in a civil action, *see* FED. R. CIV. P. 2 ("There is one form of action—the civil action."); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 513–14 (1947) (describing the incorporation of equity and admiralty in the civil action), up to and including asset forfeitures in aid of the court's criminal jurisdiction. *Noscitur a sociis*,[5] so the coupling of "civil suit" with "administrative money penalty" suggests that 3730(e)(3)'s jurisdictional bar is limited to civil actions resembling administrative monetary penalties; i.e., *in personam* actions for money. An *in rem* civil asset forfeiture proceeding in aid of the court's criminal jurisdiction, therefore, is not within the scope of "civil suit or administrative money penalty" in 3730(e)(3). Additionally, at least one Courts of Appeals and a district court have suggested, although not held, that the bar in (e)(3) is limited to cases in which the first action was enforcing the False Claims Act. *See United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944

---

[5] "[A] word is known by the company it keeps." *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 226 (2008) (citation omitted).

F.2d 1149, 1156 (3d Cir. 1991); *U.S. ex rel. Roby v. Boeing Co.*, 79 F. Supp. 2d 877, 882 (S.D. Ohio 1999).

The legislative history also supports a narrow reading of "civil suit" in 3730(b)(3). "[T]he FCA qui tam provision[] demonstrates congressional effort[] to walk a fine line between encouraging whistle-blowing and discouraging opportunistic behavior." *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 653–54 (D.C. Cir. 1994). "[I]t is apparent that a primary objective of the 1986 amendments [...] was to encourage and provide incentives for the bringing of *qui tam* actions in all but the several circumstances delineated in § 3730(e)." *Prawer*, 24 F.3d at 327. In light of the 1986 amendments' purpose of generally expanding the availability of *qui tam* actions under the False Claims Act, except where the *qui tam* action was truly derivative of a government action, Congress intended that the jurisdictional bar be a narrow one, not one that sweeps up all related claims within its ambit. The court therefore concludes that 3730(e)(3) does not bar its exercise of jurisdiction.

### 2.  3730(e)(4)(A) Does Not Bar this Court's Jurisdiction

Turning to an area of law that is much better developed, Nagel appears to claim that the court lacks subject matter jurisdiction over this action because it falls within the jurisdictional bar in section 3730(e)(4)(A)(iii). It provides, in relevant

part, that "[t]he court shall dismiss an action or claim under this section [...] if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed [...] from the news media unless [...] the person bringing the action is an original source of the information." 31 U.S.C. 3730(e)(4)(A)(iii).

The news media disclosures that Nagel claims contained the same allegations set forth in this case are two articles from AL.com and one from the Birmingham Business Journal. Collectively, the articles indicate that Demosthenes Lalisan and Richard Hicks were fired from the Alabama Organ Center, investigated by the FBI, charged with fraud by the U.S. Attorney's Office for receiving kickbacks from an unnamed funeral home, and ultimately pleaded guilty. The AL.com articles were dated September 28, 2011 and September 30, 2011. The Birmingham Business Journal Article was dated September 30, 2011. The complaint here was filed on January 13, 2014.

Taul offers a succinct response: the jurisdictional bar is only triggered if the information serving as the basis of the complaint is publicly disclosed; the mere disclosure that something is awry will not trigger the bar. That is an accurate statement of the law. *See Cooper v. Blue Cross and Blue Shield of Florida*, 19 F.3d 562, 565 (11th Cir. 1994). Further, a qualifying public disclosure requires specific identification of the defendant. *See id.* ("The allegations of widespread MSP fraud

15

made in sources in which BCBSF was not specifically named or otherwise directly identified are insufficient to trigger the jurisdictional bar."). As Taul points out, none of the defendants in this action, nor the funeral home, were identified in the stories. This court's jurisdiction is therefore not barred under 3730(e)(4)(A).

### B. The Section 981 *In Rem* Settlement Did Not Settle These Claims

Moving past jurisdiction, Nagel's first argument is that, as part of the stipulation of dismissal for the section 981 action, the False Claim Act claims were dismissed as well. This subsection addresses the contentions in sections II, IV, and V of Defendants' Brief in Support of the Motion for Summary Judgment, as well as section IV of their reply brief. The court concludes that there is no genuine issue of material fact as to whether the *in rem* release extended to a release of all civil claims relating to this transaction. The *in rem* release did not release liability for any other civil claims, and summary judgment is granted in favor of Taul on these issues.

Before getting to the parties' arguments, a few observations would be helpful. First, both release and accord and satisfaction are affirmative defenses.[6]

---

[6] Affirmative defenses and burdens of proof are substantive for *Erie* purposes, *First Coast Energy, L.L.P. v. Mid-Continent Cas. Co.*, 286 F.R.D. 630, 633 (M.D. Fla. 2012), meaning that Alabama law governs whether a particular defense is affirmative or not, notwithstanding the reference to accord and satisfaction and release as affirmative defenses in the Federal Rules of Civil Procedure.

*Austin v. Cox*, 492 So.2d 1021, 1022 (Ala. 1986) (accord and satisfaction);

*Tounzen v. Southern United Fire Ins. Co.*, 701 So.2d 1148, 1150 (Ala. Civ. App.

1991) (release). A party asserting an affirmative defense bears the burden of

proving it. *Ex parte Ramsey*, 829 So.2d 146 (Ala. 2002). Where a party bears the

burden of proof at trial, it must show that no reasonable jury could find for the non-

moving party to prevail on its summary judgment motion. *Fitzpatrick v. City of*

*Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (citation omitted).

      First off, the Defendants assert, in section II, that the stipulation in the *in rem*

action released any other claims against Nagel. The basis for this belief is quoted

below in its entirety.

> 5.    Claimants undersigned, agree, and consent to the
> judicial forfeiture of $1,100,000.00 of the
> Defendant Funds of the United States. Claimants
> furthermore abandon any rights they have or may
> have to contest the forfeiture of $1,100,000.00 of
> the Defendant funds, and in fact understand and
> agree not to contest the forfeiture of that amount of
> the Defendant Funds in any way.
>
> 6.    In consideration of the foregoing stipulations, and
> upon receipt of this executed Stipulation, the United
> States agrees to <u>release the remaining amounts of
> the Defendant Funds to Claimants</u>, including all
> interest accrued thereon, and to <u>cease any further
> forfeiture proceedings against the remaining
> Defendant Funds</u> released to Claimants.

(Doc. 61-1 at 14–15) (emphasis added). Taul believes that, by its express language,

the contract only covers the *in rem* action.

"[W]hen an instrument is unambiguous its construction and legal effect will be based upon what is found within its four corners." *Austin v. Cox*, 523 So.2d 376, 379 (Ala. 1988). Whether a contract is ambiguous is a question of law, *Brigman v. Dejute,* 593 So.2d 51, 54 (Ala. 1991), and this one is not. It must therefore be enforced—or not enforced—according to its terms. *Public Building Authority of the City of Huntsville v. St. Paul Fire and Marine Ins. Co.*, 80 So.3d 171, 180 (Ala. 2010). The release is against the funds that were the object of the forfeiture proceeding; there is no mention of *in personam* liability as to Nagel. Summary judgment is therefore **GRANTED** in favor of Taul on the issue of release.

Second, Nagel argues in section IV of his brief that the forfeiture of the funds in the *in rem* proceeding constitutes an accord and satisfaction for the obligation in the *qui tam* action. "An accord and satisfaction is an agreement reached between competent parties regarding payment of a debt the amount of which is in dispute." *Ex parte Meztista*, 845 So. 2d 795, 797 (Ala. 2001) (citation omitted). Like any contract, an accord and satisfaction requires "(1) a proper subject-matter, (2) competent parties, (3) an assent or meeting of the minds of the parties, and (4) a consideration." *Waide v. Tractor and Equipment Co.*, 545 So.2d 1327, 1328 (Ala. 1989). Nagel's entire argument on this point is "[i]t is clear that

18

the facts as set forth above meet these four requirements for accord and satisfaction." (Doc. 61-1 at 17). Nagel has pointed to no evidence suggesting that the action to enforce section 3729 was even being contemplated at the time of the stipulation in the *in rem* action, which he must. Moreover, it is clear, as discussed above, that the subject matter of the *in rem* release was limited to that action. Summary judgment is therefore **GRANTED** in favor of Taul on this issue.

On a related note, Taul argues that the release requires that the parties to it not use it as evidence. Since a motion for summary judgment must be adjudicated on the basis of admissible evidence, *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005), and the parties to the stipulation agreed not to use it as evidence, Taul reasons that Nagel's claim of release is inadequately supported and due to be denied. But "[r]elevant evidence is admissible unless" the Constitution, a statute, the rules of evidence, or other rules prescribed by the Supreme Court provide otherwise. FED. R. EVID. 402. Taul has neither argued that the stipulation is irrelevant nor that some other rule, statute, or the Constitution prohibits this court's consideration of it. As such, that provision cannot be enforced by excluding it from this court's consideration.

Nagel's final contention on this point (section V) was premised on the others: that because a *qui tam* relator is merely the agent of the United States, *see*

19

*Vermont Agency of Natural Resources v. United States v. ex rel. Stevens*, 529 U.S. 765, 773 (2000), once the United States receives satisfaction in one form, then the relator must pack up and go home. Because the premise underlying this argument has been rejected, so summary judgment is **GRANTED** in favor of Taul on this issue.[7]

### C. The In Rem Action does not have preclusive effect on this action

Defendants argue that because the *in rem* proceeding has been concluded, this action is *res judicata*. The court disagrees, and since the elements of claim preclusion are not satisfied here, this case is not barred by *res judicata*. "Barring a claim on the basis of res judicata is a determination of law." *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir. 2006) (citation omitted).

Somewhat surprisingly, it does not appear that any Court of Appeals has addressed the precise issue before the court: the preclusive effect of a forfeiture under 18 U.S.C. § 981 on a *qui tam* suit. So the court will begin with the requirements to successfully invoke claim preclusion: "(1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both

---

[7] After the court issued the notice pursuant to Rule 56(f), Nagel repeated the same arguments found in the motion for summary judgment and his reply brief, perhaps hoping they would get better with age. However, quoting the *in rem* settlement yet again failed to persuade the court.

suits; and (4) the same cause of action must be involved both cases." *Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990) (citation omitted).

The first element is no doubt satisfied here, since the previous claim was disposed of on the merits by the parties' dismissal. *See Lawlor v. Nation Screen Serv. Corp.*, 349 U.S. 322, 327 (1955) (dismissal with prejudice is a judgment on the merits). Second, there is no dispute that the court that entered the final order in the *in rem* proceeding was a court of competent jurisdiction. The third element appears to be satisfied, given the fact that both Defendants and the United States were claimants to the funds.

But Nagel's *res judicata* defense falters on the fourth criterion. The Eleventh Circuit has said that two causes of action are substantively the same when "the primary right and duty are the same in each case." *Citbank*, 904 F.2d at 1503. This is an inquiry that values substance over form. *Id.* As a rule of thumb, two cases arising from a common nucleus of operative fact are often the same, but this need not always be true. *Id.* (quoting *Ruple v. City of Vermillion, S.D.*, 714 F.2d 860, 861 (8th Cir.1983), *cert. denied*, 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984))

There are three reasons that the *qui tam* action and the civil forfeiture are not

the same action substantively. First, the presumption that a common nucleus of operative fact yields the same "case" crumbles when one case is civil and the other criminal—it is well settled that civil and criminal actions premised on the same facts are not *res judicata* for the other. 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4474, at 748 (1981). *But see United States v. Cunan*, 156 F.3d 110 (1st Cir. 1998) (holding that civil asset forfeiture is claim preclusive of criminal asset forfeiture). Second, and relatedly, the section 981 action was an ancillary action to a criminal proceeding, while the False Claims Act case is essentially an action in tort.

Moreover, the False Claims Act explicitly contemplates pursuing both criminal and civil remedies based on the same facts. *See* 31 U.S.C. § 3731(e). Third, the right at issue in the *in rem* proceeding was establishing lawful ownership of the money in the accounts, whereas in this action, the right at issue is that of the United States to be made whole after being defrauded. Having discarded the common nucleus presumption, it is clear that the asset forfeiture and the *qui tam* action are not the same "case" for purposes of *res judicata*.

Defendants argue that *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235 (11th Cir. 1999) is dispositive, but that case is inapposite. There, the plaintiff, Ragsdale, brought a *qui tam* action alleging fraudulent billing practices under the False

22

Claims Act, settled with defendant Rubbermaid, and then brought a subsequent

retaliatory firing claim under the False Claims Act. There, the court relied upon the

common nucleus presumption, which was entirely appropriate. Both the billing and

firing claims were civil actions, so the criminal/civil divide was not a problem.

Here, on the other hand, the section 981 action was an *in rem* civil action ancillary

to a criminal proceeding (thus *res judicata* does not apply).[8] Summary judgment on

this ground is **DENIED**.

### D. Laches is Inapplicable

Invoking the equitable doctrine of laches, Defendants assert that Taul and

the United States sat on their hands for too long before bringing this action, and it

should therefore be dismissed. *Cf. EEOC v. Dresser Industries, Inc.*, 668 F.2d 1199

(11th Cir. 1982) (in which an EEOC complaint was dismissed for unjust delay in

bringing the cause). Anticipating a slam dunk, Taul and the United States quote

from the United States Supreme Court for the proposition that "in the face of a

statute of limitations enacted by Congress, laches cannot be invoked to bar legal

relief." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962, 1974 (2014).

Taken out of context (as it was), that quote may put the rule too strongly. *See Black*

---

[8] Nagel, in his 56(f) response, argues that the court "must" consider the *res judicata* defenses if it considers granting summary judgment in favor of Taul on the contract defenses. Like the contract defenses, Nagel broke no new ground in his 56(f) response.

*Warrior Riverkeeper, Inc.*, 781 F.3d 1271, 1286 n. 10 (11th Cir. 2015) ("*Petrella* held only that when a copyright infringement suit seeks the legal relief of damages, and falls within the applicable statute of limitations, it is not barred by laches.").

Nonetheless, *Petrella* evinces the Supreme Court's distaste for the application of laches to actions with Congressionally prescribed statutes of limitation. *See Petrella*, 134 S.Ct. At 1974 (saying the Court has never approved application of laches to bar a claim for damages before the statute has run). *See also Herman v. South Carolina Nat. Bank*, 140 F.3d 1413, 1427 (11th Cir. 1998) ("[T]his circuit permits laches to bar an EEOC suit only because Title VII contains no statute of limitations."). And nothing in this 3730(b) action, which was brought well-within the statute of limitations found in 31 U.S.C. § 3731(b), justifies prodding the appellate courts' patience on the issue. Even Nagel agrees. (*See* Doc. 61-1 at 24 (explaining that *Petrella* precludes the application of laches)).

### E. Statute of Limitations

On the subject of the timeliness of claims, Nagel points out that the statute of limitations for retaliation claims under the False Claims Act is three years. (Doc. 70 at 4). He is correct. *See* 31 U.S.C. 3730(h)(3) (action "may not be brought more than 3 years after the date when the retaliation occurred"). Therefore, Nagel reasons, he is entitled to summary judgment as to Count II of the complaint. Taul

24

responds by saying that not all of the retaliations alleged in the complaint were more than three years old at the time of filing in 2014. And he is correct, since one of alleged instances of harassment occurred in the fall of 2012. (Doc. 1 ¶ 44). The retaliation alleged in paragraph 44 of the complaint survives, but summary judgment is granted as to any other claims of retaliation.

Taul seems to argue that all of the claims should survive because at least one instance of retaliation occurred within three years of the filing of the complaint. He cites no authority for the proposition that the continuing violation doctrine applies to False Claims Act retaliation claims. C*f. National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (cumulative effect of discriminatory behavior is hostile work environment, a single unlawful employment practice). The courts that have considered the issue have either reserved decision or concluded it does not apply. *See, e.g.*, *Weslowski v. Zugibe,* 14 F. Supp. 3d 295, 304 (S.D.N.Y. 2014); *United States ex rel. Berglund v. Boeing Co.*, 836 F. Supp. 2d 1020, 1038 (D.Or. 2011); *United States ex rel. Dyer v. Raytheon Co.*, 2011 WL 3294489, at *13 (D. Mass July 29, 2011); *Pakter v. New York City . Dep't of Educ.*, No. 08-7673 2010 WL 1141128, at *6 (S.D.N.Y. Mar. 22, 2010). The court therefore declines to consider the retaliation claims timely under the continuing violation doctrine.

**F. Any Arguments Concerning the Insufficiency of the Pleadings are Insufficiently Pleaded**

25

Section VIII, "The False Claims Act," of the brief in support of summary judgment contains a detailed description of the requirements for pleading a cause of action under the False Claims Act, but it does not explain how these requirements affect this case. To the extent that this is an attempt at an argument that the False Claims Act imposes pleading requirements above and beyond Rules 8 and 9, the court declines to consider it. *See NLRB v. McClain of Ga.*, 138 F.3d 1418, 1422 (11th Cir. 1998) (issues raised without supporting argument generally deemed to be waived).

The second-to-last paragraph in Defendants' conclusion appears to assert that the complaint did not comply with Rule 9(b). As a threshold matter, Nagel filed neither a 12(c) motion nor a 12(b)(6) motion in response to the amended complaint, so this argument is waived. Moreover, at the summary judgment stage, where a complaint may no longer be amended as of right, the court would expect a more developed argument as to the insufficiency of the pleadings, not just a single paragraph perfunctorily offering that the "who, what, when, where, and how" of fraud had not been pleaded. This argument is waived, and to the extent it is not waived, it is not sufficiently developed for the court to consider it.

### G. The Court Will Not Consider Defendants' Estoppel Argument

In their 56(f) response, Defendants took it upon themselves to both respond

to the court's notice and file a sursurreply. Included within the sursurreply is an

argument about the *in rem* forfeiture, reincarnated this time as an "estoppel"

argument. The court does not address issues raised for the first time in a

sursurreply brief. *Cf. Mamone v. United States*, 559 F.3d 1209, 1210 n. 1 (11th Cir.

2009) ("Normally, we will not address an argument raised for the first time in a

reply brief."). The motion for summary judgment on this ground is **DENIED**.

### III. Motion To Reconsider

Nagel moved on June 29, 2015 for the dismissal of the case, styled as a

motion to compel, as a remedy for Taul's alleged failure to disclose certain Rule 26

documents. (Doc. 55). The court denied Nagel's motion on August 3, 2015. (Doc.

62). Set forth therein were two alternative bases for denying the motion to compel:

first, that by failing to reply to Taul's response, Nagel admitted all of Taul's factual

contentions and that Taul's legal arguments were meritorious; second, that Nagel

failed to comply with Rule 37(a)(1) and the court's Uniform Initial Order. (Doc. 62

at 2). Nagel has moved for reconsideration of the denial of his motion to compel.

(Doc. 63). The motion for reconsideration is **GRANTED.** The motion to compel is

again **DENIED.**

Rule 37 is one mechanism by which a court may enforce discovery orders. It

provides the authority for a court to enter an order compelling discovery. *See* FED.

R. CIV. P. 37(a). Such "motion must include a <u>certification</u> that the movant has in

good faith conferred or attempted to confer with the person or party failing to make

disclosure or discovery in an effort to obtain it without court action." FED. R. CIV.

P. 37(a)(1).[9] Nagel seems to believe that a letter from Taul's attorney discussing

their discovery negotiations is sufficient to qualify as a certification, but a fact is

not certified by implication. For failing to comply with Rule 37(a)(1), the motion

to compel is **DENIED.**

Even if Nagel had properly attached a certification to his motion, the court

would be disinclined to dismiss an action on a first motion to compel. Dismissal

for failure to comply with the discovery order is "a harsh remedy to be used only in

extreme situations." *Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d Cir.

1994); *accord Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993). The only

thing extreme about this situation is Nagel's request that the action be dismissed as

a first resort. The Defendants "are advised to chill." *Mattel, Inc. v. MCA Records,*

*Inc.*, 296 F.3d 894, 908 (9th Cir. 2002).

---

[9]  This motion was filed before the 2015 amendments to the rules of Civil Procedure took effect, and this opinion was entered after. The portion of the rules quoted herein is unaffected by the 2015 amendments.

IV. <u>Conclusion</u>[10]

Defendants' motion for summary judgment is **GRANTED** as to all claims for relief for retaliation except those premised on the events of Fall 2012. Their motion for summary judgment is **DENIED** as to all other claims. On the issues of whether the section 981 stipulation constituted an accord and satisfaction or released the claims in this case, as well as the related agency claim, summary judgment is **ENTERED** against Nagel pursuant to Rule 56(f). The motion for reconsideration is **GRANTED.** The motion to compel is again **DENIED.** A separate order will issue for each motion.

**DONE** and **ORDERED** this 25th day of January 2016.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[10] Section VIII, "The Summary Judgment is Ripe for Decision," does not appear to raise an argument in favor of granting summary judgment.

29