# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **BARRY TAUL, ex rel., UNITED STATES OF AMERICA,** | )<br>)<br>) |
| Plaintiff, | )<br>) |
| | ) **Case No.: 2:14-CV-0061-VEH** |
| v. | )<br>) |
| **NAGEL ENTERPRISES, INC., et al.,** | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This is a civil action. It is currently set for trial beginning January 29, 2018. Before the Court is Defendants Nagel Enterprise's and Jed Nagel's (collectively "NEI") Motion for Judgment on the Pleadings (the "Motion"). (Doc. 116 at 1). The Court permitted NEI to file the Motion in its Order dated August 3, 2017. (Doc. 114 at 2). That Order stated:

> Any Motion for Judgment on the Pleadings <u>shall be limited to whether retaliation claims under Section 3730(h) of the False Claims Act may only be brought by employees as to the terms and conditions of their employment, thereby barring recovery for any post-employment retaliation claim</u>.

(Doc. 114 at 1-2) (emphasis added).[1]

NEI argues that "[s]ection 3730(h) does not provide a cause of action for any retaliation action outside of the terms and conditions of the pertinent employment." (Doc. 118 at 9). Taul disagrees. (Doc. 117 at 4).

In response, Taul makes two arguments. (Doc. 117 at 4). First, Taul argues that he was a contractor and therefore covered by the statute. (Doc. 117 at 4) ("Because §3730(h) provides a cause of actions for retaliation against contractors, Relator Taul's claims are viable regardless of his 'psot [sic] termination' retaliation."). Next, Taul argues that, even if he was not a contractor, the statute still covers him. (Doc. 117 at 4) ("[B]oth the plain language of the FCA and holdings from other federal Courts support Relator Taul's right to bring a §3730(h) claim (e.g. post termination) in light of the facts in this case.").

## II. RELEVANT BACKGROUND

The Amended Qui Tam Complaint (Complaint) alleges five counts of FCA violations. (*See generally* doc. 47). Most relevant here is Count IV, which alleges a violation under 31 U.S.C. § 3730(h). (Doc. 47 at 15-15). The Complaint states:

---

[1] The Court focuses on the narrow question it granted permission to brief. Any arguments not going to that question are beyond the scope of the Court's Order and will not be addressed.

# COUNT IV
# Violation of the False Claims Act, 31 U.S.C.A. § 3730 (h)

57. Plaintiff realleges all prior paragraphs of the Complaint as if set forth fully herein.

58. Relator Taul was discharged, harassed and/or discriminated against in his termination by Defendant Nagel-Abanks Defendant Jed Nagel, by and through Defendants' respective officers, agents, employees and/or contractors because of lawful acts done by Relator Taul in the furtherance of an action under the False Claims Act including, but not limited to, Relator Taul's efforts to stop violations of the False Claims Act.

59. By reason of the violation of 31 U.S.C. § 3730 (h), Defendants have knowingly or recklessly damaged the Plaintiff in an amount to be determined at trial.

WHEREFORE, the Relator prays for the following relief:

> (a) That the Relator be awarded all compensatory and punitive damages, including personal injury damages for mental anguish, pain and suffering and/or loss of reputation, to which he is entitled pursuant to 31 U.S.C. §3730(h) and other applicable law;
>
> (b) That Relator be awarded two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination against Plaintiff;
>
> (c) That the Relator be awarded all litigation costs and reasonable attorney's fees incurred as provided pursuant to 31 U.S.C. §3730(h) and other applicable law;
>
> (d) That Relator receives all relief, both at law and at equity, to which he may reasonably be entitled.

(Doc. 47 at 14-15). Taul alleges that he suffered abuse during his employment with NEI. (*See* doc. 47 at ¶ 31-36). Taul also alleges that he "informed the FBI of the fraud and illegal kickback scheme" <u>after</u> his employment with NEI ended (Doc. 47 at ¶ 36-37). After leaving NEI and telling the FBI of the alleged scheme, Taul alleges that several distressing events occurred, which he attributes to NEI. (*See* doc. 47 at 8-9). The Complaint alleges:

> 40. Shortly after informing the FBI of the fraud and illegal kickbacks described above, in or around August 2010, Taul received a plain card hand addressed to him at Valhalla funeral home in Midfield, Alabama. On one side the card stated, "He knows it was you." Taul gave this card to the FBI and the FBI retained the card.
>
> 41. After this incident, in approximately October 2010, Taul's regional manager at Valhalla funeral home talked to him about an anonymous letter that had been received stating that Taul was a thief. Shortly after this incident, in or around February 2011, Taul was fired from Valhalla funeral home. No good reason was given by Valhalla funeral home for terminating Taul.
>
> 42. After he was terminated from Valhalla funeral home, it became virtually impossible for Taul to get a job in the funeral business in Birmingham, Alabama despite having worked in the funeral business in that area since 1985.
>
> 43. However, Taul finally found a job at a funeral home in Jasper, AL in approximately September 2012.
>
> 44. The Jasper funeral home used Nagel to perform their cremations. In

4

late Fall 2012, one of Nagel-Abanks'[2] employees came to the Jasper, Al funeral home to pick up a body to cremate. The employee of Nagel-Abanks saw Taul and asked if he was working at the funeral home. Shortly thereafter, on or about December 26, 2012, Taul was fired from the funeral home in Jasper, Al.

45. Since the time that Taul informed the FBI of the fraud and illegal kickbacks in August 2010, Taul has received several threats from Nagel against himself and his family.

46. Relator Taul has clearly been retaliated against by Nagel-Abanks and Nagel and continues to suffer the economic and emotional effects of this retaliation.

47. As a result of their actions Nagel-Abanks, Jed Nagel, Demosthenes "Dem" Lalisan and Richard Alan Hicks have violated the False Claims Act and defrauded the Government.

(Doc. 47 at 8-9) (footnote added).

### III. STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). As the Eleventh Circuit has explained the Rule 12(c) standard:

> Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts. *See Bankers Ins. Co. v. Florida Residential Property and Cas. Joint Underwriting*

---

[2] The Court notes that Abanks was the name through which NEI did business. (Doc. 47 at 1).

*Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998) (citing *Hebert Abstract Co. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)); *see also* Rule 12(c), Fed. R. Civ. P. When we review a judgment on the pleadings, therefore, we accept the facts in the complaint as true and we view them in the light most favorable to the nonmoving party. *See Ortega*, 85 F.3d at 1524 (citing *Swerdloff v. Miami Nat'l Bank*, 584 F.2d 54, 57 (5th Cir. 1978)). The complaint may not be dismissed "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Slagle*, 102 F.3d at 497 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S. Ct. 99, 101–02, 2 L. Ed. 2d 80 (1957) & citing *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811, 113 S. Ct. 2891, 2916–17, 125 L. Ed. 2d 612 (1993)).

*Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

Further, "[w]hether the court examine[s] [a pleading] under Rule 12(b)(6) or Rule 12(c), the question [remains] the same: whether the [complaint] stated a claim for relief." *Sampson v. Washington Mut. Bank*, 453 F. App'x 863, 865 n.2 (11th Cir. 2011) (first alteration supplied; all other alterations in original) (quoting *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295 n.8 (11th Cir. 2002)); *Sampson*, 453 F. App'x at 865 n.2 (applying *Strategic Income* and concluding that court's error in granting a dismissal under Rule 12(c) instead of Rule 12(b)(6) was harmless).

## II.   ANALYSIS

### A.   Taul's Contractor Arguments

Taul argues that he was a contractor for NEI. (Doc. 117 at 4).[3] Taul argues that legislative history and the plain text of the FCA support protecting contractors from retaliation. (*See* doc. 117 at 8-11).

NEI responds by stating:

> The assertion that Relator Taul himself is a contractor or agent of Abanks because he worked for a funeral home that outsourced its cremations to Abanks has no rational basis. Neither the complaint nor the Relator's response to Defendants' motion for judgment on the pleadings allege that Relator Taul performed any sort or work, had the authority to represent or had any actual involvement with the business or personnel of Defendants after his employment ended in August of 2010. This fallacy is based on the assertion that Valhalla is a contractor for Defendant Abanks and, therefore, Relator Taul himself is a contractor. This is not true as Defendant Abanks performed work for Valhalla and not the other way around. If there were any contractual relationship, Defendasnt [sic] Abanks would be a contractor for Valhalla.

---

[3] Taul states:

> The Amended Complaint in this case makes it clear that Relator Taul was working in the role of a contractor in Fall 2012 in relation to the Defendants. Specifically, the Amended Complaint makes it clear that[,] in the Fall of 2012, Relator Taul and his employer at that time contracted with the Defendants to perform a cremation of a deceased individual. It was the circumstances of this particular cremation that gave rise to the Defendants [sic] retaliatory conduct that led to Relator Taul being terminated form [sic] his employer.

(Doc. 117 at 3-4).

7

(Doc. 118 at 4).

According to the Restatement (Second) of Agency, "[a]n independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. He may or may not be an agent." RESTATEMENT (SECOND) OF AGENCY § 2 (1958) (emphasis omitted).[4]

In this case, Taul's arguments that he was a contractor fail. Taul's employer used NEI to perform cremation services. (*See* doc. 47 at 9). Taul never pled that NEI paid him, or Taul's employer in Jasper, after the Fall of 2012. (*See generally* doc. 47). Based on the pleadings, Taul's Jasper employer was paying NEI. (*See* doc. 47 at 9). In other words, taking everything in the Amended Complaint as true, NEI was the contractor, and Taul's Jasper employer was the client whom NEI served. (*C.f.* doc. 47 at 9). Accordingly, Taul's first argument fails.

B. Interpreting § 3730(h)

This Court, like many, is persuaded that the most natural reading of § 3730(h) is that it does not create a claim for post-termination retaliation.[5] This Court is

---

[4] The Court treats the Restatement (Second) of Agency as persuasive authority and uses it to demonstrate the general definition and common understanding of "independent contractor."

[5] *See, Fitzsimmons v. Cardiology Assocs. of Fredericksburg, Ltd.*, No. 3:15cv72, 2015 WL 4937461, at *7 n.15 (E.D. Va. Aug. 18, 2015), compiling the following list:

8

particularly persuaded by the reasoning in a case from the United States District Court for the District of Columbia. *See U.S. ex rel. Head v. Kane Co.*, 798 F.Supp.2d 186, 207-208 (D.D.C. 2011). Only Congress can create a cause of action for post-termination retaliation; this Court cannot do so, no matter how meritorious the arguments for doing so. *See id.* at 208 n.33 (noting the limits of the judiciary).

---

*See Elkharwily, MD. v. Mayo Holding Co.*, No. 12–3062 (DSD/JJK), 2015 WL 468400, at *8 n. 7 (D.Minn. Feb. 5, 2015) (noting on summary judgment that, were plaintiff to claim any post-termination retaliation, his claims would fail because § 3730(h) did not contemplate relief for such conduct); *Weslowski v. Zugibe*, 14 F.Supp.3d 295, 306 (S.D.N.Y.2014) (granting Rule 12(b)(6) motion to dismiss § 3730(h) as to all claims but one for lack of timeliness, while noting in dicta that § 3730(h) would preclude the single timely, but improperly alleged, action because § 3730(h) did not provide a remedy for post-termination retaliation); *Bechtel v. Joseph Med Ctr.*, No. MJG–10–3381, 2012 WL 1476079, at *9–10 (D.Md. Apr. 26, 2012) (granting nurse's Rule 12(b)(6) motion to dismiss § 3730(h) claims for post-termination retaliation by interfering with medical education and hospital privileges because the statute's language "is not reasonably interpreted to include post-termination retaliatory actions"); *Master v. LHC Group, Inc.*, No. 07–1117, 2013 WL 786357, at *6–7 (W.D. La. Mar. 1, 2013 (granting Rule 12(b)(6) motion to dismiss § 3730(h) claim for post-termination retaliation of threatening to file state court suit because § 3730(h) statute protects individuals in the terms and conditions of employment, which "necessarily required that the retaliatory action occur during the period of employment"); *Poffinbarger v. Priority Health*, No. 1:11cv993, 2011 WL 6180464, at *1 (W.D.Mich. Dec. 13, 2011) (same); *United States ex rel. Head v. Kane Co.*, 798 F.Supp.2d 186, 207–08 (D.D.C.2011) (same); *United States ex rel. Davis v. Lockheed Martin Corp.*, No. 4:09cv645Y, 2010 WL 4607411, at *8 (N.D.Tex. Nov. 15, 2010) (holding that Davis did not put employers on notice of an FCA claim and stating in dicta that § 3730(h) does not cover post-employment conduct); *Lehoux v. Pratt & Whitney*, No. 05–210–P–S, 2006 WL 346399, at *2 (D.Me. Feb. 8, 2006) (interpreting pre–2009 version of § 3730(h) to require dismissal for post-termination retaliatory conduct), adopted, 2006 WL 616057 (D.Me. Mar. 9, 2009); *United States ex rel. Wright v. Cleo Wallace Ctrs.*, 132 F.Supp.2d 913, 928 (D.Colo.2000) (same).

9

## IV. CONCLUSION

Because Taul did not successfully plead that he was Nagel's contractor at the relevant time periods, and because the FCA does not create a cause of action for retaliation by a former employer against a former employee for otherwise-protected FCA actions taken after conclusion of employment, the Motion is **GRANTED**. The Court **DISMISSES** Taul's claim for post-termination retaliation under 31 U.S.C. § 3730(h).

**DONE** and **ORDERED** this the 1st day of November, 2017.

*[signature]*
**VIRGINIA EMERSON HOPKINS**
United States District Judge